# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**FEDERAL INSURANCE COMPANY,**

      **Plaintiff,**

    **v.**                            **Case No.: 2:17-cv-135**
                                              **JUDGE GEORGE C. SMITH**
                                              **Magistrate Judge Deavers**

**BENCHMARK BANK,**

      **Defendant.**

## OPINION AND ORDER

This matter is before the Court upon Defendant Benchmark Bank's Motion to Dismiss Plaintiff's Amended Complaint for Lack of Subject-Matter Jurisdiction and Failure to State a Claim Upon Which Relief Can Be Granted ("Benchmark's Motion to Dismiss") (Doc. 12). The motion is fully briefed and ripe for disposition. For the following reasons, Benchmark's Motion to Dismiss is **GRANTED IN PART and DENIED IN PART**.

### I.      BACKGROUND

Plaintiff Federal Insurance Company ("Federal") is the subrogee of two limited partnerships: Mary Harvin Center Limited Partnership and Boury Lofts Limited Partnership (the "Limited Partnerships").[1] (Doc. 11, Am. Compl. ¶ 111). The Limited Partnerships are affiliates of non-party The Woda Group, Inc. and its affiliates ("Woda Management"). (*Id.* ¶ 7).

On March 28, 2011, Woda Management entered into a Business Online Access Banking Agreement (the "Banking Agreement") providing Woda Management "with electronic banking

---

[1] The Limited Partnerships were the original plaintiffs in this action, but, as discussed *infra*, Federal was substituted as Plaintiff in the Amended Complaint.

access for various commercial accounts under its control." (*Id.* ¶ 8). Woda Management established various checking accounts at Benchmark "in the names of separate and distinct corporate entities, including the Limited Partnerships." (*Id.* ¶ 10).

On the same date, Woda Management also entered into an ODFI-ACH Originator Agreement (the "ACH Agreement") with Benchmark, allowing Woda Management to initiate online ACH transfers for specified accounts listed in Schedule C to the ACH Agreement. (*Id.* ¶¶ 13, 16). Schedule C does not include and has never included the accounts of the Limited Partnerships. (*Id.* ¶ 16).

On March 22, 2016, Woda Management's controller emailed Benchmark and asked that Donna Ferrell, Woda Construction, Inc.'s Director of Accounting, be given access to view and process ACH transfers for Woda Construction, Inc.'s account with Benchmark. (*Id.* ¶ 36). Inconsistent with these instructions, Benchmark erroneously granted Ferrell ACH access to all of Woda Management's accounts with Benchmark, including the Limited Partnerships' accounts and other accounts not listed on Schedule C of the ACH agreement. (*Id.* ¶ 38). Ferrell was never authorized by anyone at Woda Management to access, view, or process ACH transfers from the Limited Partnerships' accounts. (*Id.* ¶ 37).

Between May 18 and May 25, 2016, unknown third parties used Ferrell's login credentials to initiate a series of unauthorized transfers from the Limited Partnerships' accounts totaling over $600,000. (*Id.* ¶ 46). Federal paid the Limited Partnerships $500,000 for these losses pursuant to a policy of insurance. (*Id.* ¶ 111). Thus, at this point, the Limited Partnerships remain uncompensated for the over $100,000 remaining in uninsured losses.

Initially, the Limited Partnerships filed suit against Benchmark in the Franklin County Court of Common Pleas on July 7, 2016. (Doc. 12-1, State Court Complaint). The state court

complaint contained claims for breach of contract, violation of the Ohio Uniform Commercial Code ("UCC"), and negligence. (*Id.*). On motion by Benchmark, the state court dismissed the negligence claim as barred by the economic loss rule. (Doc. 12-2, State Court Opinion). The state court also ordered the Limited Partnerships to clarify their claim for breach of the ACH Agreement, given their factual allegations suggesting that the Limited Partnerships are not parties to that agreement. (*Id.*).

Rather than amend the state court complaint, the Limited Partnerships dismissed the state court action and re-filed their case in this Court on February 15, 2017. (Doc. 1, Compl.). In addition to the breach of contract, UCC, and negligence claims asserted in the state court action, the Limited Partnerships also added claims for violation of various federal statutes and regulations and conversion. (*Id.*). The Limited Partnerships sought as damages the full amount of $600,904 withdrawn from their accounts in the unauthorized transactions. (*Id.*).

Benchmark moved to dismiss the Complaint, citing lack of either diversity or federal question subject-matter jurisdiction. (Doc. 9, Mot. to Dismiss). The Limited Partnerships responded by filing an Amended Complaint that substituted Federal as the sole plaintiff to establish diversity jurisdiction and supplemented the allegations related to various federal standards. (Doc. 11, Am. Compl.).[2] In the Amended Complaint, Federal seeks only the $500,000 insurance payment it made to the Limited Partnerships.

Benchmark now moves to dismiss the Amended Complaint, pursuant to both Rule 12(b)(1) for lack of subject-matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 12).

---

[2] The filing of the Amended Complaint mooted Benchmark's first Motion to Dismiss (Doc. 9).

## II.    LACK OF SUBJECT-MATTER JURISDICTION UNDER RULE 12(b)(1)

### A.    Standard of review

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when the court lacks subject-matter jurisdiction.  Without subject-matter jurisdiction, a federal court lacks authority to hear a case.  *Thornton v. Southwest Detroit Hosp.,* 895 F.2d 1131, 1133 (6th Cir. 1990).  Motions to dismiss for lack of subject-matter jurisdiction fall into two general categories: facial attacks and factual attacks.  *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir. 1994).  A facial attack under Rule 12(b)(1) "questions merely the sufficiency of the pleading," and the trial court therefore takes the allegations of the complaint as true.  *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 816 (6th Cir. 2017) (quoting *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir. 1990)).  To survive a facial attack, the complaint must contain a short and plain statement of the grounds for jurisdiction.  *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016).

A factual attack is a challenge to the factual existence of subject-matter jurisdiction.  No presumptive truthfulness applies to the factual allegations.  *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015).  When examining a factual attack under Rule 12(b)(1), "the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction."  *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.,* 807 F.3d 806, 810 (6th Cir. 2015) (quoting *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012)).  The plaintiff has the burden of establishing jurisdiction in order to survive the motion to dismiss.  *DLX, Inc. v. Kentucky,* 381 F.3d 511, 516 (6th Cir. 2004); *Moir v. Greater Cleveland Regional Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990).

**B.      Discussion**

**1.      Diversity jurisdiction**

Diversity jurisdiction exists over civil actions where the amount in controversy exceeds $75,000 and is between citizens of different states. 28 U.S.C. § 1332(a)(1). The parties do not dispute that the amount in controversy exceeds $75,000 or that Federal is a citizen of Indiana and New Jersey while Benchmark is a citizen of Ohio. (Doc. 11, Am. Compl. ¶¶ 2–3). Thus, complete diversity exists as between Federal and Benchmark.

But Benchmark contends that the citizenship of the Limited Partnerships, as subrogors, must also be considered in the diversity analysis. (Doc. 12, Mot. to Dismiss at 6). As Federal failed to fully plead the citizenship of the Limited Partnerships' general and limited partners, Benchmark contends that Federal has facially failed to establish complete diversity. (*Id.* at 7–8); *see Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990) (federal court must look to citizenship of partnership's limited partners, as well as its general partners, when determining diversity). Further, Benchmark has submitted filings by the Limited Partnerships with various state administrative agencies wherein they admitted that at least some of their partners are Ohio citizens. (Doc. 12-3, Alexander Decl. and attached Annual Reports filed with the Secretaries of State for Kentucky and West Virginia). Federal has not disputed the accuracy of these documents and does not suggest that the Limited Partnerships are not, in fact, Ohio citizens. Thus, if the Limited Partnerships' citizenship must be considered, complete diversity will be lacking and the Court may not exercise subject-matter jurisdiction in this matter on the basis of diversity.

Benchmark rests the relevance of the Limited Partnerships' citizenship on the theory that the Limited Partnerships are real parties in interest to the damages sought by Federal. (Doc. 12, Mot. to Dismiss at 5–6). It is true that where an insured has been only partially compensated by

its insurer for the losses it sustained, only a partial subrogation has occurred, and both the insured and insurer are real parties in interest when considering the total amount of damages. *Exec. Jet Aviation, Inc. v. United States*, 507 F.2d 508, 514 (6th Cir. 1974). The insurer is the real party in interest to the extent of its payment to the insured (the insured loss) and the insured is the real party in interest to the extent of the remaining damages unreimbursed by the insurer (the uninsured loss). *Id.*

As a result, when there has been a partial subrogation *and* when the full amount of loss (both insured and uninsured) is sought from the defendant, a court properly examines the citizenship of both the insurer and the insured. This was the factual background of the cases cited by Benchmark. *Travelers Prop. & Cas. Co. of Am. v. Stresscrete, Inc.*, No. 10-2693-CM, 2011 U.S. Dist. LEXIS 47656, at *3 (D. Kan. May 3, 2011); *Pepsico do BRASIL, LTDA v. Oxy-Dry Corp.*, 534 F. Supp. 2d 846, 848 (N.D. Ill. 2008) ("Although *total* subrogation (which is absent here) results in focusing solely on the subrogee's citizenship for diversity purposes, *partial* subrogation forces a look at both subrogee and subrogor. . . .").

In contrast, while this case presents an example of partial subrogation, Federal's Amended Complaint seeks only the insured loss—the $500,000 it paid to the Limited Partnerships under their insurance policy—and does not seek the remaining $100,904 in uninsured losses. As a result, the Limited Partnerships are not real parties in interest to the damages sought in this action. This case is thus distinguishable from the *Stresscrete* and *Pepsico* cases that required consideration of both the insured's and insurer's citizenship. The Court was unable to locate any authorities requiring consideration of both the insured's and insurer's citizenship when only one of the interests was at issue in the action. Therefore, the only relevant citizenship for diversity purposes is that of Federal and Benchmark.

Benchmark also makes a passing reference to the Limited Partnerships being "indispensable parties" without whom a "full and fair adjudication of this matter" cannot be made. (Doc. 15, Reply in Supp. of Mot. to Dismiss at 2). While the Limited Partnerships may qualify as "necessary" parties under Federal Rule of Civil Procedure 19(a), they are not indispensable parties such that the present action cannot fairly continue in their absence under Rule 19(b). *Baker v. Minnesota Min. & Mfg. Co.*, 99 F. App'x 718, 723–24 (6th Cir. 2004) (partial subrogee is not an indispensable party and may recover whatever it is owed in a separate action); *United States v. Aetna Cas. & Sur. Co.,* 338 U.S. 366, 382 & n. 19 (1949) (insurer that is partially subrogated to the rights of an insured is a necessary, but not indispensable, party; basic rules on party joinder in the subrogation setting mean that tortfeasors "may have to defend two or more actions on the same tort.").

In sum, the only relevant citizenship for diversity purposes is that of Federal and Benchmark. Because Federal has alleged, and Benchmark does not dispute, the existence of complete diversity as between these two parties, the Court can properly exercise diversity jurisdiction over this matter.

### 2.      Federal question jurisdiction

Only one of Federal's claims, Count 4, has any relation to federal statutes, regulations, or other authorities. Federal alleges that as an FDIC-regulated bank, Benchmark is subject to, and in violation of,

> the applicable statutes, regulations and supervisory policies of the FDIC and is required to follow applicable statutes, regulations and supervisory policies of the FDIC concerning the safe and sound operation of its online banking operations, including but not limited to 12 CFR § 337.1, *et seq.*; 12 CFR Part 30; Appendix A and B; 12 CFR § 364.100, *et seq.*; 12 CFR § 326, *et seq.*; and, 12 CFR § 326.1, *et seq.*

(Doc. 11, Am. Compl. ¶ 139). Federal also alleges that Benchmark failed to follow several guidelines issued by the Federal Financial Institutions Examination Council for banking security standards. (*Id.* ¶¶ 29, 31, 33, quoting Supplement to Authentication in an Internet Banking Environment, June 28, 2011 available at [https://www.ffiec.gov/pdf/auth-its-final%206-22-11%20(ffiec%20formated).pdf](https://www.ffiec.gov/pdf/auth-its-final%206-22-11%20(ffiec%20formated).pdf) ("FFIEC Guidance")).

Benchmark argues that these allegations are insufficient to create a federal question to confer jurisdiction under 28 U.S.C. § 1331 (granting jurisdiction to district courts over "all civil actions arising under the Constitution, laws, or treaties of the United States."). While the Court is inclined to agree, it is not necessary to resolve this issue because the Court has already determined it has subject-matter jurisdiction on the basis of diversity. Further, the Court finds these arguments better addressed under the framework for Rule 12(b)(6) *infra* for failure to state a cognizable claim.

Accordingly, to the extent Benchmark seeks dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1), Benchmark's motion is **DENIED**.

### III.    FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)

#### A.    Standard of review

Benchmark also seeks dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging that Federal has failed to state a claim upon which relief can be granted.

Under the Federal Rules, any pleading that states a claim for relief must contain a "short and plain statement of the claim" showing that the pleader is entitled to such relief. Fed. R. Civ. P. 8(a)(2). To meet this standard, a party must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A claim will be considered "plausible on its face" when a plaintiff sets forth "factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 12(b)(6) allows parties to challenge the sufficiency of a complaint under the foregoing standards. In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint"; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *Flex Homes, Inc. v. Ritz-Craft Corp of Mich., Inc.*, 491 F. App'x 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

## B. Discussion

Benchmark has moved for dismissal of all five counts of Federal's Amended Complaint for failure to state a claim. The Court will consider each count in turn.

### 1. Breach of Contract

Because this is a diversity action filed in an Ohio district court, the substantive law of Ohio applies. *Allied Indus. Scrap, Inc. v. OmniSource Corp.*, 776 F.3d 452, 453 (6th Cir. 2015). Under Ohio law, the elements of a breach of contract claim are: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the

plaintiff as a result of the breach. *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012).

When proceeding by subrogation, the subrogee "stands in the place of one whose claim he has paid." *United States v. California*, 507 U.S. 746, 756 (1993) (quoting *United States v. Munsey Trust Co.*, 332 U.S. 234, 242 (1947)). Further, "[i]t is well established that a contract is binding only upon the parties to the contract and those in privity with them and that an action for breach of contract can be maintained only by the parties to the contract or those deriving rights from the contracting parties." *Ohio Sav. Bank v. H.L. Vokes Co.*, 54 Ohio App. 3d 68, 71, 560 N.E.2d 1328, 1332 (1989); *Mahalsky v. Salem Tool Co.*, 461 F.2d 581, 584 (6th Cir. 1972) (applying Ohio law). Therefore, Federal must first establish the existence of a contract between Benchmark and Federal's subrogors, the Limited Partnerships.

Federal alleges that Benchmark breached both the Banking Agreement and the ACH agreement. (Doc. 11, Am. Compl. ¶¶ 109–10). Federal also alleges that "the Limited Partnerships and other related entities, through Woda Management, entered into the Banking Agreement with Benchmark." (*Id.* ¶ 100). As to the parties to the ACH Agreement, Federal alleges only that "Woda Management also entered into [the ACH Agreement] with Benchmark" and that "the Limited Partnerships' checking accounts at Benchmark are not and never were listed in Schedule C to the ACH Agreement [listing accounts for which Benchmark was authorized to make ACH transfers]." (*Id.* ¶¶ 13, 16).

But the Banking and ACH Agreements themselves list the parties as Benchmark and "Valhalla Management and Real Estate, LLC dba Woda Management." (Doc. 1-2, Banking Agreement at 1; Doc. 1-3, ACH Agreement at 10). Nowhere on the face of the Agreements are the Limited Partnerships even mentioned. This forecloses Federal's ability to sufficiently allege

that the Limited Partnerships were parties to either agreement, because "when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Creelgroup, Inc. v. NGS Am., Inc.*, 518 F. App'x 343, 346–47 (6th Cir. 2013) (quoting *Williams v. CitiMortgage, Inc.,* 498 Fed. App'x 532, 536 (6th Cir. 2012)).

Nor has Federal sufficiently pleaded that the Limited Partnerships are in privity of contract with Woda Management, the actual party to the Agreements. Federal has not provided any explanation of how the Limited Partnerships and Woda Management are related, and Federal's vague allegation that "[t]he Limited Partnerships are both affiliated with the Woda Group, Inc. and its affiliates ('Woda Management')" is not sufficient to raise a reasonable inference of privity. (Doc. 11, Am. Compl. ¶ 7).

Because the Limited Partnerships are not parties to the Banking Agreement or ACH Agreement, nor are the Limited Partnerships sufficiently alleged to be in privity with any party to the Agreements, Federal has not stated a breach of contract claim. Accordingly, Count 1 of the Amended Complaint is **DISMISSED**.

### 2. Violation of the Ohio UCC

#### a. Lack of authorization or verification

Federal alleges that Benchmark permitted withdrawals from the Limited Partnerships' accounts that were neither authorized nor verified as required by Ohio Revised Code § 1304.57. This section, corresponding to section 4A-202 of the Uniform Commercial Code, provides in pertinent part:

> (A) A payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency.
>
> (B)(1) If a bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name of the customer as sender will be verified pursuant to a security procedure, a payment order received by the receiving bank

is effective as the order of the customer, whether or not authorized, if both of the following apply:

> (a) The security procedure is a commercially reasonable method of providing security against unauthorized payment orders.

> (b) The bank proves that it accepted the payment order in good faith and in compliance with the security procedure and any written agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the customer.

Ohio Rev. Code § 1304.57.

Thus, the risk of loss for an unauthorized transfer initiated by a third party remains with the bank, unless the bank can show that "(1) the bank and customer agreed that the authenticity of payment orders would be verified pursuant to a security procedure; (2) the security procedure is commercially reasonable; and (3) the bank proves that it accepted the orders in good faith and in compliance with the security procedure and any written agreement or instruction of the customer." *Experi-Metal, Inc. v. Comerica Bank*, No. 09-14890, 2011 WL 2433383, at *1 (E.D. Mich. June 13, 2011) (construing Michigan's identically-worded UCC provision at Mich. Comp. Laws § 440.4702).

Federal has sufficiently pleaded that the ACH transfers were neither authorized nor verified.[3] First, Federal alleges that the transfers were initiated by unknown third parties who were not authorized by the Limited Partnerships to transfer money out of their accounts, such that the transfers were not authorized under § 1304.57(A). (Doc. 11, Am. Compl. ¶ 46).

Second, the Limited Partnerships allegedly did not enter into an agreement regarding verification of payment orders as required by § 1304.57(B)(1). (*Id.* ¶ 121). As discussed *supra*,

---

[3] Federal did not address Benchmark's arguments regarding Count 2 in its opposition brief. Benchmark therefore suggested in its reply brief that Federal had impliedly conceded the unviability of this claim. (Doc. 15, Reply at 5). However, after the Court reached out to counsel for both parties for clarification, Federal confirmed that it has not abandoned its UCC claim (though it did not explain why it declined to address the claim in its opposition brief). In the absence of any argument by Federal regarding this claim, the Court evaluates its viability based on the allegations in the Amended Complaint and Benchmark's motion briefing.

the agreements attached to the Complaint were entered into by Woda Management, not the Limited Partnerships.

Third, even if the ACH Agreement between Woda Management and Benchmark satisfied § 1304.57(B)(1), Federal alleges that Ferrell, the employee whose credentials were used to initiate the fraudulent transfers, should never have had access to the Limited Partnerships' accounts in the first place. (*Id.* ¶¶ 37–38). Despite Woda Management's emailed instructions that Ferrell be given access only to the accounts of Woda Construction, Inc., Benchmark erroneously granted Ferrell access to all of Woda Management's accounts, including those of the Limited Partnerships. (*Id.*). Thus, even if the other requirements of § 1304.57(B)(1) were met, Benchmark allegedly failed to act in compliance with the written instructions of its customer when it permitted ACH transfers from the Limited Partnerships' accounts to be initiated with Ferrell's credentials. As a result, Federal has sufficiently pleaded a lack of effective verification under § 1304.57(B)(1).

Contrary to Benchmark's contention, Federal has not merely inserted "conclusory and formulaic recitations of the statutory elements set forth in these UCC provisions" into its pleading. (Doc. 12, Mot. to Dismiss at 14 n.8). Federal's Amended Complaint sets forth detailed factual allegations, which the Court accepts as true for the purpose of this motion, stating that Benchmark failed to follow Woda Management's written instructions; erroneously granted access to the Limited Partnerships' accounts to an individual who never should have had such access; and processed ACH transfers from the Limited Partnerships' accounts, even though the ACH Agreement did not so allow. Federal has therefore sufficiently pleaded that the ACH transfers in question were neither authorized nor verified under § 1304.57.

### b. Entitlement to refund

If a bank issues a payment that was neither authorized nor verified under § 1304.57, "the bank shall refund any payment of the payment order received from the customer . . . and shall pay interest on the refundable amount calculated from the date the bank received payment to the date of the refund." Ohio Rev. Code § 1304.59(A) (corresponding to UCC § 4A-204). Benchmark argues that it is not required to refund any portion of the fraudulent ACH transfers because the official comment to § 1304.59 states that a refund is required only if one or more of the following conditions apply:

(i)     no commercially reasonable security procedure is in effect,

(ii)    the bank did not comply with a commercially reasonable security procedure that was in effect,

(iii)   the sender can prove, pursuant to Section 4A-203(a)(2), that the culprit did not obtain confidential security information controlled by the customer, or

(iv)   the bank, pursuant to Section 4A-203(a)(1) agreed to take all or part of the loss resulting from an unauthorized payment order.

§ 1304.59, official comment. These conditions are stated in the disjunctive, such that the existence of any one is sufficient to require a bank to provide a refund for an unauthorized and unverified transfer. Benchmark argues that Federal has not sufficiently pleaded the existence of any of these conditions.

As to condition (iii) (that the culprit did not obtain confidential security information controlled by the Limited Partnerships), Benchmark argues that Federal has not met its burden because "Federal admits the fraudulent transfers were initiated by an individual using an employee's legitimate online banking credentials." (Doc. 12, Mot. to Dismiss at 14). There are several reasons why this one-sentence argument is insufficient to prevent liability for a refund.

To begin with, the credentials that were used were not those of an individual employed by the Limited Partnerships. Ferrell never should have had access to the Limited Partnerships' accounts in the first place. (Doc. 11, Am. Compl. ¶¶ 37–38). Although it appears Ferrell's access was granted accidentally, and not fraudulently, the Court would be hard pressed to describe her credentials as "legitimate" with regard to the Limited Partnerships' accounts.

Moreover, even if Ferrell's access were legitimate, Ferrell's credentials are confidential security information that was controlled by both Woda Management and Benchmark. The unknown third parties who used Ferrell's credentials could have obtained them from sources controlled by *either* Woda Management *or* Benchmark. The mere fact that a Woda employee's credentials were used does not mean that the security breach occurred on Woda's end. Indeed, Federal specifically alleges in its Amended Complaint that "Woda Management . . . engaged an outside, independent forensic firm, Rook Security, to examine Woda Management's network of computers, servers and pertinent electronic devices to investigate the possibility that Woda Management's systems had been hacked. The independent investigation found no evidence of a breach or of a hack related to Woda Management's network or electronic devices." (Doc. 11, Am. Compl. ¶¶ 94–95).

The Court therefore finds that Federal has sufficiently pleaded at least one of the conditions entitling it to a refund under § 1304.59(A). Because the Amended Complaint states facts sufficient to establish that the transfers were neither authorized nor verified, and that the transfers were not made possible by a security breach on the part of the customer, Federal has stated a viable claim for violation of the Ohio UCC. Accordingly, to the extent Benchmark's Motion seeks dismissal of Count 2 of the Amended Complaint, Benchmark's Motion is **DENIED**.

### 3.     Negligence

Although Federal refers to this claim as one for "violations of the Ohio UCC and common law," Benchmark correctly argues that the allegations in Count 3 sound in negligence. Federal alleges (1) Benchmark had a duty to provide commercially reasonable security procedures; (2) Benchmark breached that duty by failing to follow Woda's instructions that the Limited Partnerships' accounts not be accessible for ACH transfers; and (3) economic losses resulted from Benchmark's breach of duty. (Doc. 11, Am. Compl. ¶¶ 131–37). These are the classic elements of a negligence claim under Ohio law. *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011). Moreover, these are the same basic allegations underlying the negligence claim that the Limited Partnerships asserted in the state court action, and which the state court found to be barred by Ohio's economic loss rule. (Doc. 12-1, State Court Complaint ¶¶ 127–33; Doc. 12-2, State Court Opinion at 3–4).

This Court agrees with the state court that the economic loss rule bars this claim. As stated by Judge Brown in the State Court Opinion:

> The Ohio Supreme Court has held that the economic loss rule prevents recovery in tort for purely economic losses. *Corporex Dev. & Const. Mgmt., Inc. v. Shook, Inc.*, 106 Ohio St. 3d 412, 2005-Ohio-5409, 835 N.E.2d 701. "The well-established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable." *Id.* at ¶ 6. The rule stems from the recognition of a balance between tort law, designed to redress losses suffered by breach of a duty imposed by law to protect societal interests, and contract law, which holds that 'parties to a commercial transaction should remain free to govern their own affairs.'" (*Id.* at ¶ 6 (quoting *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St. 3d 40, 42, 537 N.E.2d 624 (1989).)
>
> As stated by the Tenth District Court of Appeals in *Clemens v. Nelson Fin. Group, Inc.*, 10th Dist. No. 14AP-537, 2015-Ohio-1232, "[a]lthough the economic loss-rule sweeps widely, it does not preclude all tort claims for economic damages." *Id.* at ¶ 36. "A plaintiff may pursue a tort claim if it is 'based exclusively upon [a] discrete, preexisting duty in tort and not upon any terms of a contract or rights accompanying privity.'" *Id.* (citing *Corporex* at ¶ 9).

> Plaintiffs assert that their negligence claim stems from Benchmark's independent common law duty to act as a reasonable bank. (Response in Opposition at p. 5-6.) However, Plaintiffs cite no authority establishing that Ohio common law recognizes any such duty. While the economic loss rule may not preclude all tort claims, Plaintiffs' claim of simple negligence against Benchmark is squarely precluded by the economic loss doctrine. See *Clemens* at ¶ 35.

(Doc. 12-2, State Court Opinion at 3–4).

Curiously, Federal asserts in its current opposition brief that Count 3 states a claim not of negligence, but of breach of contract. (Doc. 13, Mem. in Opp. at 6) ("Here, Federal has not presented a negligence claim specifically because the economic loss doctrine does not permit one. Where there is a contract (or two as the case here), the proper claim is breach of contract, not negligence. Federal has properly pled a breach of contract cause of relief."). But Count 3 of the Amended Complaint makes no mention of contracts, instead emphasizing Benchmark's alleged failure to act in a "commercially reasonable manner" and alleged "violations of the Ohio UCC and common law." (*Id.* ¶¶ 135–36). And even if Count 3 did assert a contract claim, it would be redundant with Count 1, which the Court has already determined does not state a cognizable claim. Similarly, any "violations of the Ohio UCC" would be redundant with Count 2.

No matter which lens Federal asks the Court to use in evaluating Count 3, the result is the same: Count 3 does not state a claim upon which relief can be granted. Accordingly, Count 3 of Federal's Amended Complaint is **DISMISSED**.

### 4. Violation of various federal statutes and regulations

Count 4 of Federal's Amended Complaint alleges violation of various federal statutes and regulations. Federal alleges that as an FDIC-regulated bank, Benchmark is subject to, and in violation of,

> the applicable statutes, regulations and supervisory policies of the FDIC and is required to follow applicable statutes, regulations and supervisory policies of the

> FDIC concerning the safe and sound operation of its online banking operations, including but not limited to 12 CFR § 337.1, *et seq.*; 12 CFR Part 30; Appendix A and B; 12 CFR § 364.100, *et seq.*; 12 CFR § 326, *et seq.*; and, 12 CFR § 326.1, *et seq.*

(Doc. 11, Am. Compl. ¶ 139).  Benchmark argues that Federal makes only general reference to these statutes and regulations without identifying the actual cause of action asserted by Count 4. (Doc. 12, Mot. to Dismiss at 17).  Benchmark is correct for the most part, but Plaintiff does quote several specific sections of the FFIEC Guidance that Benchmark allegedly violated. Federal specifically alleges that Benchmark failed to implement the following controls recommended by the FFIEC as part of a layered security program:

- fraud detection and monitoring systems that include consideration of customer history and behavior and enable a timely and effective institution response;

- the use of dual customer authorization through different access devices;

\* \* \*

- internet protocol (IP) reputation-based tools to block connection to banking servers from IP addresses known or suspected to be associated with fraudulent activities;

- policies and practices for addressing customer devices identified as potentially compromised and customers who may be facilitating fraud;

\* \* \*

- processes designed to detect anomalies and effectively respond to suspicious or anomalous activity related to

  - initial login and authentication of customers requesting access to the institution's electronic banking system; and

  - initiation of electronic transactions involving the transfer of funds to other parties;

\* \* \*

- enhanced controls for system administrators who are granted privileges to set up or change system configurations . . . [(e.g.,] requiring an additional

authentication routine or a transaction verification routine prior to final implementation of the access or application changes[)]; [and]

\* \* \*

- basic security controls [beyond] basic challenge questions.

(Doc. 11, Am. Compl. ¶¶ 29, 31, 33 (quoting FFIEC Guidance)).  The Court therefore construes Federal's Count 4 to seek damages for violation of the specified portions of the FFIEC Guidance.

But more is required of Federal beyond merely identifying a violation of a federal standard.  "[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 (1979).  Federal has not identified, nor is the Court able to locate, a statute, regulation, or any other authority creating a private right of action for violation of the FFIEC Guidance.[4]

Federal's opposition brief ignores this basic legal principle and relies solely on Benchmark's purported failure to cite authorities foreclosing a private right of action.  But this of course is not Benchmark's burden.  Because Federal has not identified the source of any private remedy for violation of the FFIEC Guidance, Count 4 of Federal's Amended Complaint is **DISMISSED**.

### 5.    Conversion

Federal claims that Benchmark converted the amounts of the unauthorized transfers when it failed to detect their fraudulent nature and subsequently prevent the transfers from being completed.  (Doc. 11, Am. Compl. ¶ 147).  The parties agree that an action for conversion of money will lie only when (1) the money in question is identifiable, and (2) there is an obligation

---

[4] In the absence of an expressly-created private cause of action, the Court can find an implied cause of action only after weighing various factors established by the Supreme Court in *Cort v. Ash*.  422 U.S. 66, 78 (1975).  As neither party addressed the *Cort* factors in their briefing, the Court declines to consider whether an implied cause of action for violation of the FFIEC Guidance exists.

on the part of the defendant to deliver the specific money in question. (Doc. 12, Mot. to Dismiss at 18; Doc. 13, Mem. in Opp. at 7). *See also NPF IV, Inc. v. Transitional Health Servs.*, 922 F. Supp. 77, 82 (S.D. Ohio 1996); *Haul Transp. of VA, Inc. v. Morgan*, 2d Dist. Montgomery No. CA 14859, 1995 WL 328995, at *4 (June 2, 1995).

Federal asserts that the fraudulently withdrawn funds were "identifiable" and "earmarked" for the benefit of the Limited Partnerships by virtue of their having been deposited in the Limited Partnerships' accounts. (Doc. 13, Mem. in Opp. at 8). But recovery for conversion of money is possible only when specific money is identifiable ("e.g., money in a bag, coins, or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered." *Haul Transp.*, 1995 WL 328995, at *4.). As correctly stated by Benchmark, "[t]he deposit of funds with a bank creates a debtor-creditor relationship, where the bank is the debtor and the customer-depositor is the creditor, with the bank having a duty to account to the customer for the *value* of the deposit, *not the specific funds*." (Doc. 12, Mot. to Dismiss at 19). *See Goralsky v. Taylor*, 59 Ohio St. 3d 197, 198, 571 N.E.2d 720, 722 (1991). An obligation for a defendant to deliver merely a certain sum of money, as opposed to the specific, identifiable money, creates only an indebtedness stemming from a debtor-creditor relationship and does not give rise to an action for conversion under Ohio law. *In re McWeeney*, 255 B.R. 3, 5 (Bankr. S.D. Ohio 2000).

Here, Federal's allegations that the Limited Partnerships merely deposited a sum of money in a bank account establishes precisely the debtor-creditor relationship that precludes a claim for conversion. Accordingly, Count 5 of Federal's Amended Complaint is **DISMISSED.**

## IV.    CONCLUSION

For the foregoing reasons, Benchmark's Motion to Dismiss for Lack of Subject-Matter Jurisdiction is **DENIED**. Benchmark's Motion to Dismiss for Failure to State a Claim is

**GRANTED IN PART** and **DENIED IN PART**.  Counts 1, 3, 4, and 5 of Federal's Amended

Complaint are **DISMISSED** for failure to state claim upon which relief can be granted.

The Clerk shall remove Documents 9 and 12 from the Court's pending motions list.

**IT IS SO ORDERED.**

*/s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**